---

## EL PUEBLO *v.* TORRES.

APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 305.—Resuelto en enero 23, 1911.

CONTRIBUCIONES PARA FINES POLÍTICOS.—Toda persona que solicitare de algún funcionario o empleado público una contribución para fines políticos, incurre en un delito muy serio, que afecta a la integridad y disciplina del servicio civil, y que está previsto y castigado por la sección 14 de la Ley de Servicio Civil de marzo 14 de 1907.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José Tous Soto.*

Abogado del apelado: *Sr. Jesús M. Rossy, Fiscal.*

EL JUEZ ASOCIADO, SR. WOLF, emitió la opinión del tribunal.

La sección 14 de la Ley del Servicio Civil, Leyes de 1907, página 182 dispone lo siguiente:

''Ninguna persona perteneciente al Servicio Civil de Puerto Rico tendrá obligación de contribuir con cuota alguna a fondos que se recaudaren con fines políticos, ni prestar servicios políticos; no pudiendo ser destituída, ni de otro modo perjudicada, por negarse a ello. Cualquiera persona que solicitare de los funcionarios o empleados públicos contribuciones de carácter político, incurrirá en pena de multa máxima de quinientos dollars, o en cárcel por un término que no excederá de seis meses, o en ambas penas.''

Marcelino Torres Zayas que era secretario de la Junta
Escolar de Juana Díaz, fué acusado de haber solicitado y exi-
gido de Rafael Suárez, que era un profesor de instrucción
pública en dicho pueblo, que pagara la contribución mensual
de un dollar para atender a los gastos locales del Partido
Republicano. La prueba demostró que Marcelino Torres no
solamente exigió dicha contribución prohibida por la ley, sino
que amenazó al referido Suárez con la pérdida de su destino,
por lo que fué condenado por la Corte de Distrito de Ponce
a pagar una multa de cien dollars, o en defecto de su pago a
sufrir un mes de cárcel. Se celebró la vista del caso en ape-
lación ante la Corte de Distrito de Ponce, habiendo sido el
acusado condenado anteriormente por la Corte Municipal de
Coamo, al pago de una multa de quince dollars. El apelante
no estuvo representado en la vista de la causa ante este tri-
bunal, ni fué presentado tampoco alegato alguno en favor del
mismo, no apareciendo de los autos que se haya cometido nin-
gún error. El delito es uno muy serio y afecta a la integridad
y disciplina de nuestro Servicio Civil. El Tribunal Supremo
de los Estados Unidos interpretando una sección por la que en
ciertas condiciones constituye delito el solicitar contribucio-
nes para fines políticos, se expresó, en el caso de *Ex parte
Curtis*, 106, U. S., 373, *et seq.*, como sigue: "Ha sido el mani-
fiesto propósito del Congreso en todas estas clases de disposi-
ciones, promover la eficacia e integridad en el ejercicio de los
deberes oficiales, y mantener la debida disciplina en el servicio
público. Indudablemente que tal propósito está dentro de la
propia esfera de acción del poder legislativo, y no es fácil ver
por qué la ley que ahora consideramos no está comprendida
realmente en los medios legítimos para llegar a tal fin. Es
cierto, según alega el abogado del peticionario, que no están
prohibidas las contribuciones políticas a los empleados. Los
directores de las campañas políticas, que no estén empleados
en el gobierno de los Estados Unidos, son ahora tan libres
para pedir dinero de los empleados y dedicarlo a fines políti-
cos, como libres lo estuvieron siempre; y los empleados pueden

contribuir tan liberalmente como les plazca, con tal que tales
contribuciones no sean hechas a ninguno de los funcionarios u
oficiales a quienes se les prohibe exijan dichas contribuciones.
Lo que ahora consideramos no es si el Congreso ha llegado
hasta donde puede llegar, sino si lo que se ha hecho está den-
tro de los límites constitucionales en cuanto a su discreción
legislativa. Un sentimiento de independencia según la ley,
conduce al fiel desempeño del servicio público, y no hay nada
que tienda más a quitar este sentimiento que el temor a la
pérdida del empleo. Si pueden exigirse contribuciones a los
empleados públicos por otras personas que tienen autoridad
oficial, entonces es muy fácil comprender que aquello que em-
pieza por una simple petición termina por una exigencia, y
el incumplimiento con esta exigencia puede ser considerado
por aquellos que tienen la facultad de destituir, como una in-
fracción de cierta supuesta obligación, que nace de las rela-
ciones políticas de las partes. Las contribuciones obtenidas
bajo tales circunstancias, generalmente se hacen para evitar
las consecuencias del desagrado personal de un superior, como
para fomentar las ideas políticas del contribuyente—para evi-
tar la pérdida del empleo, y no para ejercitar un privilegio
político. La ley no establece restricción alguna en cuanto a
dar o recibir contribuciones, excepto cuando sea necesario
para proteger en cierto modo a aquellos que están en el servi-
cio público contra las extorsiones que puedan hacérseles me-
diante intimidación o pérdida personal * * *.'' ''Si no exis-
tieran otros motivos para esta clase de legislación que los que
se relacionan con la protección de aquellos que están en el
servicio público contra las extorsiones injustificadas, la cons-
titucionalidad de tal legislación sería clara a nuestro juicio;
pero hay otras razones que según nuestro entender son igual-
mente buenas. Si los empleados públicos pueden ser llama-
dos por aquellos que tienen autoridad para que contribuyan
con su propio salario a los gastos de las campañas políticas,
y el negarse a hacer dicha contribución puede dar por resul-
tado que personas competentes queden fuera de su empleo,

entonces las contribunciones liberales o espléndidas constituirían el motivo para sostener en su empleo a los incompetentes. Y de igual modo, si una parte del salario que el empleado recibe por sus servicios ha de darse para fines políticos, entonces es fácil comprender la necesidad de aumentar el sueldo del empleado a fin de que haya medios para hacer la contribución, y de este modo el propio gobierno estará suministrando de modo indirecto el dinero para atender a los gastos que ocasiona el sostenimiento de un partido político en el poder, que tiene entonces en sus manos el patronazgo público. Los partidos políticos deben necesariamente existir en una forma de gobierno republicano; y cuando los destinos públicos dependen en gran parte del éxito de un partido, indudablemente que los empleados sentirán deseos de sostener en el poder el partido a que pertenecen. El estatuto que ahora estamos considerando nada tiene que ver con esto. El propósito aparente quedará cumplido si impide que los que tengan cargos elevados exijan esa ayuda para tales fines, como condición para conservar el destino.''

Somos de opinión de que estas consideraciones son aplicables a las razones o motivos por los cuales existe la ley con arreglo a la cual fué condenado el acusado. Debe confirmarse la sentencia, debiendo enmendarse en el sentido de que el castigo alternativo se ajuste a la ley.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández, y Asociados MacLeary y del Toro.

El Juez Asociado, Sr. Aldrey, no tomó parte en la resolución de este caso.